### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KAY RETTBERG TRENT, | ) | |
| | ) | **Case No. B-04-53296C-7W** |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| KAY RETTBERG TRENT | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **ADVERSARY PROCEEDING** |
| | ) | **NO: 06-6024W** |
| RAY H. PREVETTE, | ) | |
| | ) | |
| Defendant. | ) | **Chapter 7** |

### MEMORANDUM OPINION

This adversary proceeding came on for trial on February 15, 2007, to determine the validity of a proof of claim filed by Ray H. Prevette ("Mr. Prevette") in the Chapter 13 bankruptcy proceeding of Kay Rettberg Trent ("Ms. Trent").[1]  Thomas W. Anderson appeared on behalf of Ms. Trent, and Robert E. Price, Jr. appeared on behalf of Mr. Prevette.

The Amended Complaint of Ms. Trent seeks a declaration that the proof of claim filed by Mr. Prevette is invalid.  Further, the Amended Complaint seeks damages for fraud, and for unfair

---

[1]Ms. Trent filed a voluntary petition under Chapter 13 of the Bankruptcy Code on November 11, 2004.  Her case was converted to one under Chapter 7 on August 11, 2005.

1

and deceptive trade practices.[2]  A proof of claim for $84,000.00 was filed by Mr. Prevette for the remainder of the purchase price due for the sale of approximately 64.9 acres of unimproved land in Wilkes County, North Carolina (the "Property").

Based upon a review of the evidence presented at trial, the arguments of counsel, and a review of the entire official file, this Court finds that the proof of claim filed by Mr. Prevette is valid and that Ms. Trent's claim for fraud should be dismissed.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b), which this Court may hear and determine.

## II. FACTS

The transaction at issue arose from the acquaintance of Mr. Prevette and Ms. Trent's ex-husband, Mr. Barry Trent.  Although the Trents separated in 1997 and divorced in 1999, they remained business partners.  Mr. Prevette was introduced to Mr. Trent in August of 2002.  Mr. Trent learned that the Property was for sale, inspected the Property, discussed the purchase of the Property with Ms. Trent, and negotiated with Mr. Prevette for the purchase of the Property.  At the time of the initial negotiations and until August of 2003, Ms. Trent lived in Virginia.  She did not participate in the negotiations concerning the Property.  Mr. Prevette and Mr. Trent did not reduce their agreement to a formal purchase contract.  No evidence of the purchase negotiations

---

[2]At the close of Ms. Trent's case in chief, Mr. Prevette moved for dismissal of both the fraud claim and the claim for unfair and deceptive trade practices.  The Court dismissed the claim for unfair and deceptive trade practices and denied the motion as to the fraud claim.

exists except for some handwritten notes by Mr. Trent.

The parties agree that $78,400.00 was paid to Mr. Prevette for the purchase of the Property. The parties do not agree, however, about whether the $78,400.00 represented the full purchase price.

The transfer of the Property from Mr. Prevette to Ms. Trent was accomplished by the execution of a general warranty deed (the "Deed") on July 24, 2003, which was filed in the Office of the Register of Deeds of Wilkes County on July 30, 2003. On the Deed, Mr. Prevette is listed as the grantor, and Trent Company, Inc. and Kay R. Trent are listed as the grantees. The Deed does not state the consideration granted for the transfer. Mr. Prevette testified that he executed the Deed before he was fully paid because Ms. Trent had already paid him $78,400.00 and because he trusted Ms. Trent when she told him that she would pay him the rest of the purchase price.

On April 20, 2004, Mr. Prevette met with Ms. Trent to discuss the payment of the remainder of the purchase price. The testimony of Ms. Trent and Mr. Trent differ greatly as to the substance of this discussion (and several subsequent discussions). The parties agree, however, that during their conversation, Ms. Trent and Mr. Prevette both signed a document (the "Document") that was handwritten by Mr. Prevette.[3] The Document confirms the previous

---

[3]Mr. Prevette testified that the Document was signed because it accurately reflected their conversation and the status of the transaction. Ms. Trent testified that she signed the Document because Mr. Prevette told her that Mr. Trent still owed him "some money" and because, although she was surprised by his statement, she trusted Mr. Prevette. Ms. Trent signed the Document without consulting Mr. Trent, even though, at the time, she lived on the Property in a camper, and he lived on the Property in a separate structure. She testified that they were not "getting along" at that time. According to her testimony, it was more than a year later that they communicated about the Document, via United States mail, for the first time.

3

payments that were made to Mr. Prevette for the Property and evidences their agreement that $84,000.00 was still owed to Mr. Prevett from the transaction. The Document states the total purchase price for the Property as $162,400.00 and the amount previously paid as $78,400.00. The amount previously paid (i.e., $78,400.00) is listed on the Document as paid by "personal checks from August 2002 - April 2003" in the amount of $13,500.00 and another check for $64,900.00 on April 29, 2003.

Thereafter, no further amounts were paid. On May 4, 2004, Mr. Prevette instituted an action against Ms. Trent and Trent Company, Inc. in the District Court of Wilkes County, North Carolina. The Complaint sought payment of the balance allegedly owed by Ms. Trent to Mr. Prevette for the purchase of the Property.

On May 26, 2004, Ms. Trent filed her first Chapter 13 bankruptcy (case no. 04-53296). In her schedules, she listed her ownership of the Property and an $84,000.00 unsecured debt to Mr. Prevette based upon a "Civil Action." The debt to Mr. Prevette was not listed as disputed, contingent, or unliquidated. At her Section 341 meeting on July 2, 2004, Ms. Trent's counsel stated that she wanted to pay Mr. Prevette, and Ms. Trent did not correct him. By Order entered on September 24, 2004, Ms. Trent's plan of reorganization was confirmed. The confirmed plan provided that unsecured creditors would be paid in full, including the $84,000.00 unsecured debt to Mr. Prevette. Ms. Trent defaulted on her payments under her plan, and her case was dismissed by Order entered on October 19, 2004.

On November 9, 2004, Ms. Trent filed her second Chapter 13 bankruptcy (case no. 04-53296). In her schedules, she again listed her ownership of the Property and an $84,000.00 unsecured debt to Mr. Prevette based upon a "Civil Action." The debt to Mr. Prevette was not

4

listed as disputed, contingent, or unliquidated.  At her Section 341 meeting on January 14, 2005,

Ms. Trent did not inform the Chapter 13 trustee that she disputed Mr. Prevette's claim.  By Order

entered on July 8, 2005, the Court ordered that the case would be converted to a case under

Chapter 7 of the Bankruptcy Code on August 8, 2005, unless Ms. Trent sold the Property.  By

Order entered August 11, 2005, this case was converted to a case under Chapter 7.

On September 2, 2005, the Court ordered that the case would be converted to a case under
Ms. Trent testified that in late July of 2005 she received a letter, dated July 18, 2005,

from Mr. Trent, who was incarcerated in the State of Virginia.[4]  Mr. Trent's letter and his

testimony, taken by deposition on October 26, 2006, and admitted at trial, asserts that $78,400.00

was the full purchase price for the Property and that nothing more was owed to Mr. Prevette.[5]  In

spite of this development, at her Section 341 meeting on September 2, 2005, Ms. Trent did not

inform the Chapter 7 trustee that she disputed Mr. Prevette's claim.

On September 2, 2005, the Chapter 7 trustee filed a motion for authority to auction the

Property.  By Order entered on October 18, 2005, the Chapter 7 trustee was authorized to auction

the Property.  By Order entered on October 24, 2005, the Court confirmed the sale and authorized

the Chapter 7 trustee to sell the Property to the high bidder, Dale. V. Compton, for $203,500.00,

and if a good faith deposit was not tendered by Mr. Compton within ten days, then to sell the

Property to the second highest bidder, Mr. Prevette, for $200,750.00.  The Property was

eventually conveyed to Mr. Prevette.

---

[4]Mr. Trent's incarceration in Lunenburg Correctional Center in Victoria, Virginia, began in June of 2004.  Mr Trent remained incarcerated through the trial of this matter.

[5]Mr. Trent alleges that he and Mr. Prevette had a homosexual relationship for two months, during which Mr. Prevette agreed to sell the Property for a downpayment and $1,000.00 per acre, and that when Mr. Trent ended their relationship, Mr. Prevette was upset and later demanded $2,500.00 per acre.  Mr. Prevette denies these allegations.

On December 29, 2005, Ms. Trent amended her schedules to list the debt to Mr. Prevette as disputed.  On March 17, 2006, Ms. Trent instituted this adversary proceeding.

Ms. Trent alleges that she was fraudulently induced to sign the Document and that the purchase price was fully paid as of April 29, 2003, by which date Mr. Prevette had been paid a total of $78,400.00.  Mr. Prevette alleges that the purchase price of $162,400.00 stated on the Document is accurate and that Ms. Trent signed it because it accurately reflected the total purchase price and the money that was still owed to him.  It is undisputed that Ms. Trent willingly signed the Document.

## III. ANALYSIS

### A.  Burden of Proof

A proof of claim that is executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of the claim." FED. R. BANKR. PROC. 3001(f).  The ultimate burden of proof, however, is not shifted by this presumption in favor of validity.  "[T]he debtor has the initial burden of establishing a colorable challenge to a properly filed poof of claim; but once the debtor has met the burden, the burden of going forward shifts back to the creditor, and the creditor bears the ultimate burden of persuasion." 4 Keith M. Lundin, Chapter 13 Bankruptcy § 287.1 (3d ed. 2006); see also In re Carrazco, No. 02-52925, slip op. (Bankr. M.D.N.C. Sept. 26, 2003)(2003 WL 22231720); In re Hodges, No. 01-10255C, slip op. (Bankr. M.D.N.C. Feb. 4, 2003)(2003 WL 262521)("If the objecting party produces such evidence, the burden of going forward reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.").

B.  Analysis of the Facts

Ms. Trent presented sufficient evidence at trial to overcome the presumption of validity imposed by Rule 3001(f).  Thus, the burden shifted to Mr. Prevette to prove the validity of his claim by a preponderance of the evidence.  In re Hodges, slip op. at 2 (citing In re Allegheny Int'l, Inc., 954 F.2d 167, 174 (3d Cir. 1992)).

The Court finds that Mr. Trent entered into negotiations with Mr. Prevette concerning the sale of the Property.  Mr. Trent was interested in securing a tract of land on which Ms. Trent could operate a campground that would allow her to make a living and care for their son.  Mr. Trent conducted all of the negotiations with Mr. Prevette and apparently did not inform Ms. Trent of the substance of those negotiations.  Ms. Trent testified that she never actually knew the full purchase price.  She testified that she understood that the purchase price had been paid in full when the Deed was executed, but that she was persuaded to believe that an additional $84,000.00 was owed when Mr. Prevette requested that she sign the Document.  She signed the Document without discussing the matter with Mr. Trent, even though they both lived on the Property.  She testified that she had no reason to distrust Mr. Prevette when she signed the Document, and that she learned that she did not owe the money when she received a letter over a year later from her incarcerated ex-husband indicating that Mr. Prevette was trying to take advantage of her.[6]

The evidence contradicts Ms. Trent's allegations that she was ignorant of the purchase price and that she did not know that there was a balance owing.  Ms. Trent came from Virginia to look at the Property in October of 2002.  At that time, Mr. Prevette told her that he was asking

---

[6]Mr. Trent's deposition testimony states that the purchase price to which he and Mr. Prevette agreed was $13,500.00 plus $1,000.00 per acre, which totals $78,400.00.

7

for $2,500.00 per acre.  Notes written by Mr. Trent during his negotiations with Mr. Prevette

indicate, at the very least, that the price contemplated by the parties was well in excess of

$78,000.00.  Ms. Trent asked Mr. Prevette to execute the Deed before the purchase price was

fully paid so that she could borrow against the Property and pay him the rest of what she owed.

Ms. Trent indicated to Mr. Prevette that she would get a loan that would allow her to both pay

him the remainder of the purchase price and make some improvements on the Property.

Thereafter, Mr. Prevette asked Ms. Trent about the status of the loan numerous times and

generally pestered her about it to the point that she avoided coming into contact with him.

Kenneth Dale Campbell, the owner of a resort in the Traphill, North Carolina area where

Mr. Trent stayed before moving onto the Property, testified, without contradiction, that he

introduced Mr. Trent to Mr. Prevette and that he (Mr. Campbell) and his partner were present at a

meeting in which Mr. Trent and Mr. Prevette discussed the sale and agreed upon a purchase of

$2,500.00 per acre, with a $13,500 downpayment.  Mr. Campbell also testified that the Trents

discussed the sale for $2,500.00 per acre in his presence.

Josephine Louise Love, who is Mr. Prevette's sister, testified that she was aware of the

sale of the Property and that on two occasions, in March of 2004 and thereafter, she heard Ms.

Trent and Mr. Prevette discuss the question of when he would be paid in full.  Violette Prevette

Billings, who is also Mr. Prevette's sister, testified that Ms. Trent asked her to co-sign on a loan

with her in August of 2003, for the purpose of acquiring money to pay Mr. Prevette.  Robert Lee

Prevette, who is Mr. Prevette's bother, testified that Ms. Trent approached him in the Fall of

2003 about building a structure on the Property.  He testified that she told him that she was in the

process of applying for a loan for the purpose of paying for the construction and for paying Mr.

8

Prevette the remainder of the purchase price. He further testified that Mr. Trent approached him in the Spring of 2004, after Mr. Prevette had filed suit. He testified that Mr. Trent was angry because Mr. Prevette had not given them more time to pay and that Mr. Trent did not dispute the debt.

## IV. CONCLUSION

Except for the unsubstantiated testimony of the Trents, the evidence in this case overwhelmingly supports the position of Mr. Prevette. The Court finds the testimony and evidence presented by Mr. Prevette to be more credible than that presented by the Trents and that such evidence is sufficient to persuade the Court as to the validity of Mr. Prevette's claim. Therefore, the Court finds that Mr. Prevette has proved the validity of his claim by a preponderance of the evidence. Further, Ms. Trent's claim for fraud shall be dismissed.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**<u>PARTIES IN INTEREST</u>**

Edwin H. Ferguson, Jr.

Ray H. Prevette

Robert E. Price, Jr.

Kay Rettberg Trent

Thomas W. Anderson